SCANNED

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>DAVID JONES   )<br>a/k/a "Dave Kaos"   ) | Magistrate No. 13-MJ-152-NT<br>COMPLAINT FOR VIOLATION OF<br>(21 U.S.C. § 846) |

## COMPLAINT

The undersigned complainant, being duly sworn, states:

### COUNT ONE

From a time unknown, but no later than September 2011, through and until about September 7, 2012, in the District of Maine and elsewhere,

**DAVID JONES**
**a/k/a "Dave Kaos"**

conspired with persons known and unknown to distribute, and possess with intent to distribute, 100 kilograms or more a mixture or substance containing marijuana.

In violation of Title 21, United States Code, Section 841(a)(1). It is further alleged that defendant's conduct as a member of this conspiracy involved 100 kilograms or more of a mixture and substance containing marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(B).

The complainant states that this complaint is based on the attached affidavit which is incorporated herein by reference.

Paul Wolf
Special Agent
United States Drug Enforcement Administration

SWORN AND SUBSCRIBED TO before
me this 4th day of October 2013

Hon. Nancy Torresen
United States District Judge

## AFFIDAVIT OF PAUL WOLF

I, Paul Wolf, being first duly sworn, do hereby state:

1. I have been employed as a Special Agent of the United States Drug Enforcement Administration ("DEA") since 1995. From 1999 to the present I have been assigned to the DEA's Portland, Maine, Resident Office, within the New England Field Division.

2. I make this Affidavit in support of the issuance of a criminal complaint charging David Jones with conspiracy to distribute, and possess with intent to distribute 100 kilograms or more a mixture or substance containing marijuana in violation of Title 21, United States Code, Section 846. The information contained in this affidavit is known to me from personal knowledge and discussions with other investigating agents. Since this affidavit is being submitted for a limited purpose, I have not included each and every fact that I know concerning this investigation. Rather, I have set forth only those facts that relate to the issue of whether probable cause exists that David Jones committed the above referenced offense. In support thereof, I respectfully state the following:

3. As part of this investigation, law enforcement personnel have developed several cooperating defendants (CDs) that possessed information relevant to this investigation.

### Cooperating Defendant 2[1]

4. In September 2012, CD-2 told law enforcement the following:

---

[1] Beginning in 2012, Cooperating Defendant 2 (hereinafter "CD-2") has provided information to a law enforcement agency regarding drug trafficking activity. CD-2 is believed to be providing information related to this investigation because CD-2 is facing federal drug trafficking charges. No promises or representations have been made to CD-2 but it is reasonable to believe that CD-2 hopes to receive consideration on these pending cases. Most of the information provided by CD-2 was provided under the terms of a "proffer letter" which provides direct use immunity to CD-2 for the information provided. Information provided by CD-2 is believed to be reliable because to date, much of the information provided by CD-2 has been corroborated to the extent possible by independent investigation, including interviews with other sources of information. Agents have found no instances where CD-2 has been found to have been untruthful or has attempted to deceive agents relating to the information provided. CD-2 has two prior state theft convictions.

1

a. In late 2011, CD-2 and Jones became friends. CD-2 also began obtaining marijuana from Jones that CD-2 in turn distributed to other persons. Through this friendship, CD-2 had many conversations with Jones in which Jones discussed his marijuana trafficking.

b. Through these conversations, CD-2 learned the following:

   i. Jones initially obtained marijuana from a person from Saco, Maine. After approximately two months, Jones had developed a source of supply in California who was CD-3's relative.

   ii. In late 2011, Jones was acquiring marijuana from California and distributing it to multiple customers in multiple states.

   iii. Jones initially used FedEx for the shipments but after one package was seized Jones switched to U.S. Postal Service.

   iv. Jones also would fly to California and send parcels containing marijuana to customers.

   v. CD-2 has seen Jones in possession of thousands and thousands of dollars generated from the sale of marijuana.

   vi. Jones told CD-2 that Jones gave several hundred thousand dollars to a Maine attorney for the attorney to launder.[2]

   vii. Jones has several marijuana suppliers in California.

---

[2] The attorney who allegedly laundered drug proceeds for Jones has been identified. Investigators have been provided business records that corroborated that in 2012 the attorney and Jones engaged in financial dealings together in which Jones paid the attorney over $100,000 in cash. The investigation of the financial relationship between Jones and the attorney reveal that the financial dealings between Jones and the attorney were not within the scope of an attorney-client relationship but rather that the attorney and Jones were partners in several businesses and a real estate transaction. Upon Jones' arrest in Kansas (described below), the attorney sent Jones a letter terminating all business relations with Jones. Law enforcement has obtained a copy of that letter from the attorney as part of this investigation.

    viii.    CD-2 stated that CD-3 helps Jones by providing Jones with addresses for Jones to send marijuana packages. CD-3 then picks up the packages and delivers them to Jones.

    ix.    CD-2 helped Jones by delivering money from customers to Jones.

    x.    CD-2 stated that in September 2012, Jones hired CD-2 to drive to California with a car containing a large sum of money. CD-2 then met Jones and CD-3 (both of whom had flown to California) in California where Jones purchased approximately one hundred pounds of marijuana. CD-2, in one car, and CD-3 and Jones, in another car, then drove from California destined for Maine. In Kansas, CD-2 was stopped by a Kansas State trooper and the marijuana was seized.

### Cooperating Defendant 3[3]

5. In February 2013, CD-3 told law enforcement the following:

    a. CD-3 met Jones in late 2010/early 2011, and they soon developed a friendship.

    b. CD-3 told Jones that CD-3 had a relative in California who could ship Jones marijuana.

    c. In September 2011, CD-3 and Jones traveled to California so Jones could meet the relative. During this trip, CD-3, Jones, and others trimmed marijuana plants, yielding 30-60 pounds of marijuana. CD-3 subsequently mailed some of this

---

[3] Beginning in 2012, Cooperating Defendant 3 (hereinafter "CD-3") has provided information to law enforcement agency regarding drug trafficking activity. CD-3 is believed to be providing information related to this investigation because CD-3 is facing federal drug trafficking charges. No promises or representations have been made to CD-3 but it is reasonable to believe that CD-3 hopes to receive consideration on these pending cases. Most of the information provided by CD-3 was provided under the terms of a "proffer letter" which provides direct use immunity to CD-3 for the information provided. Information provided by CD-3 is believed to be reliable because to date, much of the information provided by CD-3 has been corroborated to the extent possible by independent investigation, including interviews with other sources of information. Agents have found no instances where CD-3 has been found to have been untruthful or has attempted to deceive agents relating to the information provided. CD-3 has no criminal record.

    marijuana to Massachusetts. CD-3 then flew back to Massachusetts where CD-3 collected the packages. CD-3 then delivered the packages to Jones in Maine.

d. CD-3 stated that while CD-3 was in California, the relative raped CD-3. CD-3 informed Jones of that incident and Jones told CD-3 that Jones would not do business with the relative.

e. After the initial shipment, CD-3 regularly would receive packages containing marijuana at numerous addresses. The packages came from several locations in California. CD-3 used third parties' addresses as the locations to which packages would be sent. CD-3 then would collect the packages from the third parties' locations and deliver them to Jones in Maine. Jones paid CD-3 for assisting Jones.

f. CD-3 stated that one of the parcels was intercepted in June or July 2012.

g. CD-3 stated that in September 2012, Jones asked CD-3 to fly to California and be Jones' driver for the week. CD-3 then flew to California where CD-3 met Jones and CD-2.

h. Jones purchased approximately one hundred pounds of marijuana in California. CD-2, in one car, and CD-3 and Jones, in another car, then drove from California destined for Maine. In Kansas, CD-2 was stopped by a Kansas State trooper and the marijuana was seized.

i. CD-3 estimated that she delivered a total of approximately 150 pounds to Jones that had been mailed from California.

6. As part of this investigation, law enforcement personnel interviewed Witness 1. Witness 1 was provided immunity for statements Witness 1 made during the interview. Witness 1 stated the following:

   a. In 2011-2012, Witness 1 was friends with CD-3;

   b. Witness 1 met a man she knew as Dave through CD-3; she did not know Dave's last name but on his Facebook page, his name is Dave Kaos;[4]

   c. On two occasions, Dave told Witness 1 that he sold marijuana;

   d. In approximately 2011-2012, CD-3 recruited Witness 1 to allow Witness 1's residence to be used to accept packages of marijuana that were mailed from California;

   e. CD-3 received two such packages and when each package was received CD-3 came and picked up each package and told Witness 1 that CD-3 was bringing the package to Dave in Maine.

7. On September 5, 2012, a trooper with the Kansas Highway Patrol stopped a 2011 Nissan bearing Michigan registration CGP4776 in Kansas for registration and traffic violations. A drug dog was brought to the scene of the traffic stop and alerted in a manner that indicated the presence of drugs in the Nissan. An ensuing search of the Nissan's trunk resulted in the seizure of about 100 pounds of marijuana. CD-2, who was driving the Nissan, was arrested for possession with intent to distribute marijuana. CD-2 told law enforcement that (a) David Jones was the owner of the marijuana seized from the Nissan; (b) about two weeks prior to the car stop, Jones had concealed about $200,000 in a vehicle that the driver of the Nissan had driven to California for Jones; (c) Jones flew to California; (d) Jones purchased the marijuana in California; (e) Jones said that, over the past year, he had 5,500 pounds of marijuana shipped to

---

[4] I have observed David Jones' Facebook page, and his name on that page is Dave Kaos.

5

him using the U.S. Postal Service from California to Massachusetts and Maine; (f) Jones agreed to pay the driver of the Nissan $10,000 to bring the marijuana from California to Jones's residence in Scarborough, Maine; and (g) Jones, who was following the Nissan in a separate vehicle at the time of the car stop, arranged to meet at a hotel in Ellsworth, Kansas.

8. Later on September 5, 2012, law enforcement officers set up surveillance in the vicinity of the Ellsworth hotel. Jones was arrested by law enforcement officers several blocks from the hotel. At the time of the arrest, Jones had about $8,000 in cash.

9. On September 5, 2012, law enforcement agents executed a state search warrant at Jones's Scarborough residence and seized, among other things: a large plastic bag containing paper money bands, a counterfeit money detector, an electronic money counter, currency ($4,098) and a 2008 Chevrolet Silverado. In addition, agents recovered receipts from a law firm reflecting cash payments from Jones to this attorney[5].

10. As part of this investigation, agents interviewed the person who sold the Silverado to Jones on February 16, 2012 who told authorities that Jones purchased the Silverado for about $21,000 in cash.

11. On January 11, 2006, Jones was found guilty of felony trafficking in scheduled drugs in Bangor Superior Court and was sentenced to two years imprisonment of which all but 30 days was suspended. Docket # BANSCCR200500732.

12. On March 16, 2011, Jones was found guilty of felony aggravated trafficking in scheduled drugs in Penobscot Criminal Docket Court and was sentenced to 6 months of imprisonment and a $5,000 fine. Docket # PENCDCR201003621.

---

[5] This attorney was the attorney identified by CD-2 as whom Jones told CD-2 he (Jones) had provided hundreds of thousands of dollars to launder.

## **CONCLUSION**

13.     Based on the facts set forth above, I respectfully request that the Court issue a criminal complaint charging David Jones with conspiracy to distribute, and possess with intent to distribute, 100 kilograms or more of a mixture or substance containing marijuana, in violation of Title 21, United States Code, Section 846.

_____
Paul Wolf
Special Agent
United States Drug Enforcement Administration

Sworn to before me and subscribed in my presence this 4th day of October 2013.

_____
Nancy Torresen
United States District Judge

7